**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOE L. ANDREWS and ELGIN I. MCCARGO, EXECUTOR OF THE ESTATE OF ANNIE MCCARGO-ANDREWS, a/k/a ANNIE MURL MCCARGO-ANDREWS,<br><br>    Plaintiffs,<br><br>        v.<br><br>MONROE COUNTY TRANSIT AUTHORITY and CHARLES JORDAN,<br><br>    Defendants, | CIVIL ACTION NO. 3:11-CV-1859<br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Defendants Monroe County Transit Authority and Charles Jordan move to dismiss plaintiffs' complaint. Mr. Andrews, an Alzheimer's patient, claims he was assaulted by Mr. Jordan, a bus driver, after he mistakenly boarded Mr. Jordan's bus. Mr. Andrews further alleges the Transit Authority unlawfully exposed him to this assault by failing to train Mr. Jordan to properly deal with the mentally disabled. The Transit Authority and Mr. Jordan argue the complaint fails to sufficiently allege any of the elements of a "state created danger" claim. The Court agrees and will grant the motion.

## **BACKGROUND**

Mr. Andrews and Ms. McCargo allege as follows.

Plaintiffs are Joe L. Andrews and Elgin I. McCargo. Ms. McCargo is the executor of the estate of Annie McCargo-Andrews, who died in December 2009. Mr. and Mrs. Andrews were married in 1993. Defendant Monroe County Transit Authority is a political subdivision of the Commonwealth of Pennsylvania. Mr. Jordan was an employee of the Transit

Authority during the time relevant to the complaint.

Mr. Andrews was diagnosed with Alzheimer's disease in 2000 and began treatment shortly after. At the time of the underlying incident, he was living independently with his wife as his primary caregiver. On October 8, 2009, the Andrews went shopping at Walmart. While checking out, Mr. Andrews got away from his wife and left the store. He then tried to board a Transit Authority bus. After trying to board the bus without paying, Mr. Jordan, the driver, asked him what he was doing. Mr. Andrews, who was visibly confused and nonverbal, then began to take out his penis. Mr. Jordan began yelling at Mr. Andrews. He then grabbed him and threw him off the bus and onto the sidewalk. Mr. Andrews fractured his hip and required hip replacement surgery. As a result of the fall, his mental condition also deteriorated rapidly, and he required frequent hospitalization. He is currently institutionalized and completely incompetent. Mrs. Andrews the passed away from breast cancer in December 2009. The Andrews were thus deprived of their last two months together as husband and wife. The injuries the Andrews suffered were the result of the Transit Authority's failure adequately vet and train Mr. Jordan.

Mr. Andrews and Ms. McCargo filed their complaint on October 7, 2011. Their complaint alleges a federal due process "state-created danger" claim under 42 U.S.C. § 1983. It also alleges battery and vicarious liability under state law. The Transit Authority and Mr. Jordan filed a motion to dismiss in November. The motion has been fully briefed and is ripe for review.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal

is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington*

*Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

**I.    Due Process "State-Created Danger" Claim**

The "state-created" danger claim will be dismissed because the elements of this claim have not been adequately pled.

Under section 1983, civil remedies are provided to individuals who have sustained a deprivation of rights secured by the United States Constitution or federal law. 42 U.S.C. § 1983. "Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). To establish a section 1983 claim a plaintiff must show a violation of a right secured by the United States Constitution or federal law and show that the deprivation was committed by a person acting under color of state law. *Id.* (citations omitted).

The Due Process Clause provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." The Due Process Clause does not impose

an affirmative obligation on the state to protect its citizens. *See DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 195-96 (1989). Instead, "[t]he Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.*  However, one exception to this general rule arises under the "state-created danger" doctrine, where the state assumes responsibility for the safety of a person for whom it affirmatively creates or enhances a risk of danger. *See Kneipp*, 95 F.3d at 1208; *see also DeShaney*, 489 U.S. at 200 ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.")  As the Third Circuit has noted, "the cases where the state-created danger theory has been applied were based on discrete, grossly reckless acts committed by the state or state actors using their peculiar positions as state actors, leaving a discrete plaintiff vulnerable to foreseeable injury." *Kneipp*, 95 F.3d at 1208.

> A "state-created danger" claim has four elements:
>
> (1) "the harm ultimately caused was foreseeable and fairly direct;"
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (internal citations omitted).  To prevail on his claim, plaintiff must establish all four of these elements. *See*

5

*Sanford v. Stiles*, 456 F.3d 298, 311 (3d Cir. 2006) (citations omitted).

### A.   Foreseeability of the harm

The first element—that the harm ultimately caused was foreseeable and fairly direct—necessarily entails allegations of "an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips v. County of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008). *See also D.N. ex rel. Nelson v. Snyder,* 608 F.Supp.2d 615, 625 (M.D.Pa. 2009). In addition to the foreseeability component of the analysis, the harm must be "a 'fairly direct' result of the defendant's acts." *Phillips*, 515 F.3d at 239." This inquiry essentially asks whether the alleged misconduct and the harm caused were "too attenuated" to justifiably hold the defendant liable."*Snyder*, 608 F.Supp.2d at 625 (citing Phillips, supra, at 238).

In *Morse v. Lower Merion School Dist.*, plaintiff sued school district after his wife was killed by Arcelia Stovall, an individual with a history of mental illness who had entered the school building through an open door. 132 F.3d 902 (3d Cir. 1997). The door had been left open because contractors were working on the building. The plaintiff alleged a "state-created danger," claiming that the school district was aware of the risk they were creating because the unlocked door had previously resulted in a number of thefts and at least one assault. In examining the first element of a "state-created danger" claim, the Third Circuit held that the school district "could not have foreseen that allowing construction workers to use an unlocked back entrance for access to the school building would result in the murderous act of a mentally unstable third party, and that the tragic harm which ultimately befell Diane Morse was too attenuated from defendants' actions to support liability." *Morse*,

6

132 F.3d at 908.  This holding was based on three reasons: (1) the complaint did not allege that the school district was aware of Mr. Stovall's violent propensities; (2) there was no allegation that the school district was aware of anyone posing a credible threat of violence to persons inside the school building; and (3) Mr. Stovall's attack was not a "fairly direct" result of defendants' actions.

Mr. Andrews and Ms. McCargo have not made any factual allegations that the harm suffered was either foreseeable or the direct result of the Transit Authority's actions. Nowhere in the complaint do they allege that the Transit Authority had any actual knowledge or specific enough awareness to put them on notice of Mr. Jordan's violent tendencies.  Additionally, Mr. Jordan's alleged attack was not the direct result of the Transit Authority's actions.  While the Transit Authority did hire him, the relationship between this decision and the attack is too attenuated to hold the Transit Authority responsible.  From the allegations in the complaint, the attack appears to have been a random and discrete incident that was unforeseeable.

### B.     Level of culpability that "shocks the conscience"

"[B]ecause the culpability requirement is often the most difficult element for a plaintiff to prove, the outcome of a state-created danger case will often turn on this prong." *Sanford*, 456 F.3d at 305.  There is, however, no precise definition for the term "shocks the conscience." Instead, a court must look to the circumstances of each particular case and determine whether the purported conduct shocks the conscience. *See Lewis*, 523 U.S. at 850-51; *see also Miller v. City of Phila*., 174 F.3d 368, 375 (3d Cir. 1999) ("The exact degree of wrongfulness necessary to reach the "conscience-shocking" level depends upon the circumstances of a particular case.") Generally, the level of culpability required to shock

the conscience increases as the time state actors have to deliberate decreases. In a "hyperpressurized environment," an intent to cause harm is usually required. On the other hand, in cases where deliberation is possible and officials have the time to make "unhurried judgments," deliberate indifference is sufficient. *Sanford*, 456 F.3d at 309.

However, courts have consistently held that the state's mere negligence will not "shock the conscience" for purposes of establishing a substantive due process claim. *See, e.g., Lewis*, 523 U.S. at 848-49 ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"); *Schieber v.. City of Philadelphia*, 320 F.3d 409, 419 (3d Cir.2003) ("negligence is not enough to shock the conscience under any circumstances"). In contrast, if the state actor unjustifiably intended that his conduct injure an individual, such conduct will likely rise to the level of conscience shocking. *See Schieber*, 320 F.3d at 418 (" 'conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level'" (quoting *Lewis*, 523 U.S. at 848-49)). In other words, "[T]he environment created by the state actors must be dangerous; they must know it to be dangerous; and ... [they] must have been at least deliberately indifferent." *Morse*, 132 F.3d at 910 (quoting *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir.1994)). "The state's actions must evince a willingness to ignore a foreseeable danger or risk." *Id*.

Here, the Transit Authority has not acted in a way that "shocks the conscience." There have been no factual allegations that the Transit Authority either knew they had created a dangerous situation or that they were deliberately indifferent to it. Although Mr. Jordan's alleged actions were ugly and unfortunate, there are no allegations that the Transit Authority had any prior knowledge of the danger he posed to bus patrons. Even if the

8

Transit Authority was negligent in its hiring or training of Mr. Jordan, that negligence alone would not be enough to "shock the conscience."

### C. "Foreseeable plaintiff"

To satisfy the "foreseeable plaintiff" prong, it need not be alleged that the state's actions placed a *specific individual* in danger. Rather, plaintiff can satisfy this element if he, "was a member of a discrete class of persons subjected to the potential harm brought about by the state's actions." *Morse*, 132 F.3d at 913 . A "discrete plaintiff" may mean a specific person or a specific class of persons. "The primary focus when making this determination is foreseeability." *Morse*, 132 F.3d at 913.

Here, this element is a closer call. But it is of little consequence. The Transit Authority contends that Mr. Andrews was not part of a discrete class but simply a member of the public. Mr. Andrews, in contrast, contends he was a member of a specific class of persons because he is mentally disabled. Since Mr. Jordan was not trained in how to deal with such individuals, Mr. Andrews alleges, Mr. Jordan ended up assaulting him. Even granting Mr. Andrews this point, it will not alter the Court's decision.

### D. "Affirmative" acts

Under the fourth element of a state-created danger claim, "[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1374 (3d Cir.1992) (en banc). The Third Circuit has acknowledged that the line between action and inaction may not always be clear. *D.R.*, 972 F.2d at 1374. However, it has never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively

exercised. *Phillips*, 515 F.3d at 236. Third Circuit jurisprudence requires a plaintiff allege an affirmative action, rather than inaction or omission. *Bright*, 443 F.3d at 282. The three necessary conditions to satisfy the fourth element of a state-created danger claim are that: (1) a state actor exercised his or her authority, (2) the state actor took an affirmative action, and (3) this act created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all. *Id.* at 281-82. More fundamentally, there needs to be a "direct causal connection" between the acts or omissions of the state and the harm which befell the victim. *Morse*, 132 F.3d at 915.

Here, the only action taken by the Transit Authority was hiring Mr. Jordan. This act ultimately resulted in Mr. Andrews' allegedly being assaulted. But by itself it is too removed in time from the alleged assault to qualify as an "affirmative act." There are no allegations that the Transit Authority hired Mr. Jordan knowing he was violent or that they received complaints from patrons and did not reprimand or fire him. The Transit Authority did nothing to put Mr. Andrews in greater danger than he otherwise would have been in. The complaint essentially alleges the Transit Authority failed to properly train Mr. Jordan. But this fact, by itself, is an omission and not an affirmative act. The link between the two events is simply too tenuous to provide a "direct causal connection."

In conclusion, the Court will dismiss the "state-created danger" claim because the complaint fails to properly allege at least three of the claim's four elements.

## II. State law claims

Mr. Andrews and Ms. McCargo's state law claims will also be dismissed. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim or claims if the district court has dismissed all claims over which it has original jurisdiction. Since the Court will dismiss the "state-created danger" claim – the sole basis

of the Court's jurisdiction under 28 U.S.C. § 1331 – it will also decline supplemental jurisdiction over the state law battery and vicarious liability claims.

### III. Leave to Amend

The Third Circuit has instructed that if a complaint is vulnerable to 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000)). Therefore, the Court will give the plaintiffs twenty-one days to amend their complaint or it will be dismissed with prejudice.

### CONCLUSION

The Court will grant the motion to dismiss. Mr. Andrews and Ms. McCargo have not sufficiently pled the elements of a "state-created danger" claim and the Court declines to exercise jurisdiction over the state law claims. Plaintiffs will have twenty-one days to amend their complaint. An appropriate order follows.

1/18/12  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOE L. ANDREWS and ELGIN I. MCCARGO, EXECUTOR OF THE ESTATE OF ANNIE MCCARGO-ANDREWS, a/k/a ANNIE MURL MCCARGO-ANDREWS,<br><br>    Plaintiffs,<br><br>        v.<br><br>MONROE COUNTY TRANSIT AUTHORITY and CHARLES JORDAN,<br><br>    Defendants, | CIVIL ACTION NO. 3:11-CV-1859<br><br>(JUDGE CAPUTO) |

**ORDER**

   **NOW**, this ___18th___ day of January, 2012, **IT IS HEREBY ORDERED** that the Transit Authority's and Mr. Jordan's motion to dismiss (Doc. 5) is **GRANTED**. Mr. Andrews and Ms. McCargo have **twenty-one (21) days** to amend their complaint. If they do not, it will be **DISMISSED with prejudice**.

 

                                                           /s/ A. Richard Caputo
                                                           A. Richard Caputo
                                                           United States District Judge