# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOE L. ANDREWS and ELGIN I. MCCARGO, EXECUTOR OF THE ESTATE OF ANNIE MCCARGO-ANDREWS, a/k/a ANNIE MURL MCCARGO-ANDREWS,<br><br>Plaintiffs,<br><br>v.<br><br>MONROE COUNTY TRANSIT AUTHORITY and CHARLES JORDAN,<br><br>Defendants. | CIVIL ACTION NO. 3:11-CV-1859<br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before the Court is the Motion to Dismiss Plaintiffs' Revised Amended Complaint (Doc. 14) filed by Defendants Monroe County Transit Authority and Charles Jordan. Joe Andrews, an Alzheimer's patient, claims he was assaulted by Charles Jordan, a bus driver, after he mistakenly boarded a bus driven by Mr. Jordan. Mr. Andrews further alleges that the Transit Authority unlawfully exposed him to this assault by failing to educate and train its employees to properly deal with the mentally disabled and for specifically failing to fire or discipline Mr. Jordan despite his known propensity to act violently towards transit passengers. The Transit Authority and Mr. Jordan argue that the Revised Amended Complaint fails to sufficiently allege a "state-created danger" claim. Because Plaintiffs fail to allege the "affirmative act" element of a "state-created danger" claim, Defendants' motion to dismiss will be granted.

## **BACKGROUND**

The facts as alleged in the Revised Amended Complaint are as follows:

Plaintiffs are Joe L. Andrews and Elgin I. McCargo.  Ms. McCargo is the executor of the estate of Annie McCargo-Andrews, who died in December 2009. (*Revised Amended Complaint*, ¶ 1) (hereinafter "*RAC*").  Mr. and Mrs. Andrews were married in 1993.  (*Id*.) Defendant Monroe County Transit Authority is a political subdivision of the Commonwealth of Pennsylvania. (*Id*. ¶ 2.)  Mr. Jordan was an employee of the Transit Authority during the time relevant to the complaint. (*Id*. ¶ 3.)

Mr. Andrews was diagnosed with Alzheimer's disease in 2000 and began treatment shortly after. (*Id*. ¶ 27.)  At the time of the underlying incident, he was living independently with his wife as his primary caregiver. (*Id*.)

On October 8, 2009, the Andrews went shopping at Walmart. (*Id*. ¶ 28.)  While checking out, Mr. Andrews wandered away from his wife and left the store. (*Id*. ¶¶ 29-30.) He then attempted to board a Transit Authority bus. (*Id*. ¶ 30.)   After trying to board the bus without paying, Mr. Jordan, the driver, asked him what he was doing.  Mr. Andrews, who was visibly confused and nonverbal, then began to take out his penis. (*Id*. ¶¶ 30-32.)

Mr. Jordan proceeded to yell at Mr. Andrews. (*Id*. ¶ 34.)  Mr. Jordan then grabbed Mr. Andrews, shoved him repeatedly, and threw him off the bus and onto the sidewalk. (*Id*.) Mr. Jordan then shut the door to the bus. (*Id*.)  Mr. Jordan's attack was not yet completed, however, as he proceeded to reopen the bus door while Mr. Andrews was lying on the sidewalk, exit the bus, and recommence verbally and physically assaulting Mr. Andrews. (*Id*. ¶ 36.)

As a result, Mr. Andrews fractured his hip and required hip replacement surgery. (*Id*. ¶ 42.) Because of the fall, Mr. Andrews' mental condition deteriorated rapidly, and he required frequent hospitalization. (*Id*. ¶ 44.)  Now, he is currently institutionalized and

completely incompetent. (*Id*. ¶¶ 45-46.)   And, as Mrs. Andrews passed away from breast cancer in December 2009, the Andrews were deprived of their last two months together as husband and wife. (*Id*. ¶ 47.)

Mr. Andrews and Ms. McCargo filed their original pleading on October 7, 2011. (Doc. 1.)  Their complaint alleged a federal due process "state-created danger" claim under 42 U.S.C. § 1983. It also alleged claims for battery and vicarious liability under state law.  After Defendants filed a motion to dismiss the original pleading, the Court dismissed the action because Plaintiffs failed to adequately allege three of the four required elements for a "state-created danger" claim under § 1983 and the Court declined to exercise supplemental jurisdiction over the remaining state law claims. (Doc. 11.)

Subsequently, on February 8, 2012, Plaintiffs filed a Revised Amended Complaint to cure the deficiencies in the original pleading. (*RAC*.)  The Revised Amended Complaint contains the same causes of action as set forth originally. (*Id*.)  On February  21, 2012, Defendants filed a motion to dismiss the Revised Amended Complaint for failure to state a claim upon which relief can be granted. (Doc. 14.)  The motion has now been fully briefed and is ripe for disposition.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).   The Court does not consider whether a plaintiff will ultimately prevail. *See id.*  A defendant bears the burden of

establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir.2000).

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the ... claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir.2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element.

4

*Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1949**.**

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir.1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir.1997)).

## DISCUSSION

**I.     Due Process "State-Created Danger" Claim**

The "state-created danger" claim will be dismissed because Plaintiffs have not alleged the "affirmative act" requirement of the claim.

Under § 1983, civil remedies are provided to individuals who have sustained a deprivation of rights secured by the United States Constitution or federal law. 42 U.S.C. § 1983. "Section 1983 does not, by its own terms, create substantive rights; it provides only

remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  To establish a §1983 claim a plaintiff must show a violation of a right secured by the United States Constitution or federal law and show that the deprivation was committed by a person acting under color of state law. *Id.* (citations omitted).

The Due Process Clause provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  The Due Process Clause, though, does not impose an affirmative obligation on the state to protect its citizens. *See DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 195-96 (1989).  Instead, "[t]he Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.*  One exception to this general rule, however, arises under the "state-created danger" doctrine, where the state assumes responsibility for the safety of a person for whom it affirmatively creates or enhances a risk of danger. *See Kneipp*, 95 F.3d at 1208; *see also DeShaney*, 489 U.S. at 200 ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.")  As the Third Circuit has noted, "the cases where the state-created danger theory has been applied were based on discrete, grossly reckless acts committed by the state or state actors using their peculiar positions as state actors, leaving a discrete plaintiff vulnerable to foreseeable injury." *Kneipp*, 95 F.3d at 1208.

A "state-created danger" claim has four elements:

6

> (1) "the harm ultimately caused was foreseeable and fairly direct;"
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (internal citations omitted). To prevail on this claim, Plaintiffs must establish all four of these elements. *See Sanford v. Stiles*, 456 F.3d 298, 311 (3d Cir. 2006) (citations omitted). Although the fourth element is dispositive of the instant motion, the Court will nevertheless address each element of a "state-created danger" claim.

### A. Foreseeability of the Harm

The first element—that the harm ultimately caused was foreseeable and fairly direct—necessarily entails allegations of "an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips v. County of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008); *see also D.N. ex rel. Nelson v. Snyder*, 608 F.Supp.2d 615, 625 (M.D.Pa. 2009). In addition to the foreseeability component of the analysis, the harm must be "a 'fairly direct' result of the defendant's acts." *Phillips*, 515 F.3d at 239." This inquiry essentially asks whether the alleged misconduct and the harm caused were "too attenuated" to justifiably hold the defendant liable. *Snyder*, 608 F.Supp.2d at 625 (citing

7

*Phillips*, supra, at 238).

In *Morse v. Lower Merion School Dist.*, the plaintiff sued the defendant school district after his wife was killed by an individual with a history of mental illness who had entered the school building through an unlocked door. 132 F.3d 902 (3d Cir. 1997). The door had been left open because contractors were working on the building. *See id*. at 903. The plaintiff alleged a "state-created danger," claiming that the school district was aware of the risk they were creating because the unlocked door had previously resulted in a number of thefts and at least one assault. *See id*. In examining the first element of a "state-created danger" claim, the Third Circuit held that the school district "could not have foreseen that allowing construction workers to use an unlocked back entrance for access to the school building would result in the murderous act of a mentally unstable third party, and that the tragic harm which ultimately befell Diane Morse was too attenuated from defendants' actions to support liability." *Morse*, 132 F.3d at 908. This holding was based on three reasons: (1) the complaint did not allege that the school district was aware of the killer's violent propensities; (2) there was no allegation that the school district was aware of anyone posing a credible threat of violence to persons inside the school building; and (3) the attack was not a "fairly direct" result of defendants' actions.

Unlike the plaintiff in *Morse*, Plaintiffs' Revised Amended Complaint contains factual allegations that the harm suffered was a foreseeable and direct result of the Transit Authority's actions. Specifically, Plaintiffs allege that the Transit Authority had actual knowledge and specific enough awareness to put them on notice of Mr. Jordan's violent tendencies, as Plaintiffs assert that the Transit Authority was aware of multiple complaints of Mr. Jordan's hostility towards passengers, which the Transit Authority had acknowledged

as an "ongoing problem." (*RAC*, ¶¶ 17-18.) Additionally, Mr. Jordan's attack was sufficiently alleged to be a direct result of the Transit Authority's actions, as Plaintiffs assert that the attacked occurred because the Transit Authority failed to reprimand or discipline Mr. Jordan despite his known tendency for violent and hostile conduct. (*Id*. ¶ 20.). From these allegations in the Revised Amended Complaint, Plaintiffs may be able to establish a direct causal connection between Mr. Jordan's attack and the Transit Authority's improper acts. *See Morse*, 132 F.3d at 909. As such, Plaintiffs have sufficiently pled the first element of a "state-created" danger claim.

### B.     Level of Culpability that "Shocks the Conscience"

"[B]ecause the culpability requirement is often the most difficult element for a plaintiff to prove, the outcome of a state-created danger case will often turn on this prong." *Sanford*, 456 F.3d at 305. There is, however, no precise definition for the term "shocks the conscience." Instead, a court must look to the circumstances of each particular case and determine whether the purported conduct shocks the conscience. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998); *see also Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999) ("The exact degree of wrongfulness necessary to reach the "conscience-shocking" level depends upon the circumstances of a particular case.") Generally, the level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases. *Sanford*, 456 F.3d at 309. In a "hyperpressurized environment," an intent to cause harm is usually required. *Id*. On the other hand, in cases where deliberation is possible and officials have the time to make "unhurried judgments," deliberate indifference is sufficient. *Id*.

However, courts have consistently held that the state's mere negligence will not

9

"shock the conscience" for purposes of establishing a substantive due process claim. *See, e.g., Lewis*, 523 U.S. at 848-49 ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"); *Schieber v.. City of Philadelphia*, 320 F.3d 409, 419 (3d Cir.2003) ("negligence is not enough to shock the conscience under any circumstances"). In contrast, if the state actor unjustifiably intended that his conduct injure an individual, such conduct will likely rise to the level of conscience shocking. *See Schieber*, 320 F.3d at 418 (" 'conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level'" (quoting *Lewis*, 523 U.S. at 848-49)). In other words, "the environment created by the state actors must be dangerous; they must know it to be dangerous; and ... [they] must have been at least deliberately indifferent." *Morse*, 132 F.3d at 910 (quoting *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir.1994)). "The state's actions must evince a willingness to ignore a foreseeable danger or risk." *Id*.

Plaintiffs' Revised Amended Complaint contains adequate factual allegations that the Transit Authority either knew they had created a dangerous situation or that they were deliberately indifferent to it. Specifically, Plaintiffs allege that patrons had lodged complaints against Mr. Jordan, and, therefore, the Transit Authority "recognized that Jordan was intemperate towards bus riders, had propensities to be both impatient and violent, and did not possess the qualities of personality that would allow him to serve the public transportation needs of the bus riding public without risking verbal and physical altercation and risk of bodily harm." (*RAC*, ¶ 19.) Yet, despite these complaints, the Transit Authority failed to take disciplinary action against Mr. Jordan. (*Id*. ¶ 20.) Plaintiffs have therefore sufficiently alleged that the Transit Authority was aware of a dangerous condition, and, nevertheless, ignored this foreseeable risk of danger. *See Morse*, 132 F.3d at 910.

C.     **"Foreseeable Plaintiff"**

To satisfy the "foreseeable plaintiff" prong, it need not be alleged that the state's actions placed a *specific individual* in danger.  Rather, Plaintiffs can satisfy this element if Mr. Andrews, "was a member of a discrete class of persons subjected to the potential harm brought about by the state's actions." *Morse*, 132 F.3d at 913 .  A "discrete plaintiff" may mean a specific person or a specific class of persons. *See id*.  "The primary focus when making this determination is foreseeability." *Id*.

As, noted in the Court's January 18, 2012 Memorandum, (Doc. 11), whether Mr. Andrews was a foreseeable plaintiff is a close call.  However, the Court will proceed as though Mr. Andrews adequately alleged that he is a member of a specific class of persons because he is mentally disabled. (*RAC*, ¶ 27.)  And, because Mr. Jordan was not trained in how to deal with such individuals, he ended up assaulting Mr. Andrews. (*Id*. ¶¶ 27, 58.)  In light of these allegations, Plaintiffs have sufficiently pled the foreseeable plaintiff or foreseeable victim element of a "state-created danger" claim.

D.     **"Affirmative" Acts**

Plaintiffs' "state-created danger" claim must nevertheless be dismissed because Plaintiffs do not allege the fourth element of a "state-created danger" claim.  Under the fourth element, "[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriment in terms of exposure to danger." *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1374 (3d Cir.1992) (en banc).  The Third Circuit has acknowledged that the line between action and inaction may not always be clear. *D.R.*, 972 F.2d at 1374.  However, the Third Circuit has never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised. *Phillips*, 515 F.3d at

11

236. Third Circuit jurisprudence requires a plaintiff allege an affirmative action, rather than inaction or omission. *Bright*, 443 F.3d at 282. The three necessary conditions to satisfy the fourth element of a state-created danger claim are that: (1) a state actor exercised his or her authority, (2) the state actor took an affirmative action, and (3) this act created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all. *Id.* at 281-82. More fundamentally, there needs to be a "direct causal connection" between the acts or omissions of the state and the harm which befell the victim. *Morse*, 132 F.3d at 915.

The parties, however, dispute whether the Transit Authority's actions in this case were affirmative acts or merely omissions. Essentially, Defendants argue that the Transit Authority's failure to fire or discipline Mr. Jordan was simply an omission, while Plaintiffs assert that the Transit Authority's decision to retain Mr. Jordan satisfies the affirmative act requirement of a "state-created danger" claim. The characterization of the Transit Authority's conduct is one of critical importance because "failures to act cannot form the basis of a valid" "state-created danger" claim. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 433 n.11 (3d Cir. 2006).

In applying this principle, courts in the Third Circuit have routinely dismissed "state-created danger" claims predicated on a defendant's failure to act. For example, in *DeWitt v. Delaware Valley Sch. Dist.*, No. 10-1836, 2011 WL 3033361, at *1 (M.D. Pa. July 25, 2011), the plaintiff asserted a "state-created danger" claim against the defendant school district when the school district failed to prevent a third-party from injuring the plaintif. In granting the school district's motion to dismiss, this Court held that the "mere failure to protect the plaintiff is not actionable" as an affirmative act for a "state-created danger" claim. *See id.* at *3; *see also Bright v. Westmoreland Cnty.*, 443 F. 3d 276, 284 (3d Cir. 2006)

("liability based solely on a failure of the state to act is clearly foreclosed by *DeShaney*" and "mere 'failure to protect an individual against private violence' does not violate the Due Process Clause"); *Brown v. Sch. Dist. of Philadelphia*, No. 08-2787, 2010 WL 2991741, at *8 (E.D. Pa. July 28, 2010) ("school district's failure or refusal to discipline, transfer, or expel student violators is not a state-created danger").

In *Naparsteck v. Pennsylvania Dep't of Pub. Welfare*, No. , 2012 WL 123859, at *1 (M.D. Pa. Jan. 17, 2012), the plaintiff filed a "state-created danger" claim against the defendants asserting that the defendants' failure to remove a minor child from his mother's custody, despite removing the minor's three older siblings, violated his Fourteenth Amendment Due Process rights. This Court granted the defendants' motion to dismiss the Fourteenth Amendment claim to the extent that the plaintiff relied on a "state-created danger" theory because the plaintiff failed to allege the fourth element of the claim. *See id*. at *6. Specifically, the court could "not find the defendants' alleged actions to be sufficiently foreseeable or direct to trigger the state-created danger exception." *Id*. Moreover, the court reasoned that the plaintiff's argument that the defendants' failure to remove the minor from the mother's custody was "an attempt to portray a clear omission as an affirmative action, which is prohibited by the state-created danger exception." *Id*.

In *Goss ex rel. Goss v. Alloway Twp. Sch.*, 790 F. Supp. 2d 221, 224 (D. N.J. 2011), the plaintiff was injured while playing on the monkey bars at Defendants' playground. According to the plaintiff, in the six months before his accident, three other students were seriously injured on the playground. *See id*. In dismissing the plaintiff's "state-created danger" claim, the court recognized that "the essence of Plaintiff's claim is that Defendants did nothing to make the playground safer before Plaintiff was harmed but after other students were injured. *Although Plaintiff frames his allegations in terms of affirmative acts,*

13

*the identified policies illustrate inaction*: to not add padding to the playground and to not supervise the students." *Id*. at 227 (emphasis added). Thus, "it is the inaction of Defendants, not their actions, that Plaintiff alleges to be the cause of his harm." *Id*. Consequently, the court dismissed the plaintiff's "state-created danger" claim. *Id; see also Kaucher*, 455 F.3d at 435 (allegations that the defendants "failed to act affirmatively to improve conditions at the jail," and "failed to act affirmatively to educate and warn inmates and corrections officers about MRSA and to train them in infection prevention" were simply "allegations of omissions insufficient to trigger substantive due process liability"); *Nawuoh v. Venice Ashby Cmty Ctr.*, 802 F. Supp. 2d 633, 642 (E.D. Pa. 2011) ("failure to train . . . is not an 'affirmative act' that satisfies the fourth element").

Although Plaintiffs' characterize the Transit Authority's decision to retain Mr. Jordan as an affirmative act, a review of the Revised Amended Complaint confirms that Plaintiffs' "state-created danger" claim is predicated on the Transit Authority's omissions and inaction. Specifically, the Transit Authority's alleged omissions include:

> 16. Notwithstanding MCTA's explicit recognition that their bus operators were failing to interact appropriately with the disabled public, and despite a recognized need for retraining of certain bus drivers, MCTA deliberately ignored their statutory and federal mandates to serve the disabled public. Specifically, and in contravention of written policies of MCTA, MCTA *did not discipline* bus operators who displayed hostility towards the disabled public, *nor did MCTA require training or retraining* of bus operators who displayed hostility towards the disabled public, *nor did MCTA review or modify its training protocols* to address their recognized deficiency.
>
> 21. Notwithstanding this recognition, *MCTA failed to reprimand, discipline, or fire* Jordan, and *failed to refer* Jordan for retraining or further training.
>
> 22. . . . MTCA *failed to take any action whatsoever* to ameliorate this risk.
>
> 25. Despite actual knowledge that their training protocols were inadequate to properly equip their bus operators with the skills necessary to appropriately and safely interact with the disabled bus riding public, MCTA deliberately ignored the risk of harm and *failed to take any action* to rectify the deficiencies in their training protocols, and *failed to establish and enforce* existing policies

mandating reasonable accommodations for and service to the disabled public.

(*RAC*, ¶¶ 16, 21-22, 25) (emphasis added).

In light of these allegations, it is readily apparent that Plaintiffs seek to impose liability against the Transit Authority for omissions similar to those that were rejected by the courts in *DeWitt*, *Naparsteck*, and *Goss ex rel. Goss*. Here, the Transit Authority's alleged inaction includes failing to train or discipline Mr. Jordan and failing to institute or enforce an effective policy to educate bus drivers on interacting and dealing with disabled passengers.[1] While the Court does not take lightly the allegations contained in the Revised Amended Complaint regarding the Transit Authority's disregard and/or indifference to the needs of disabled passengers, because Plaintiffs' claim is predicated on the Transit Authority's inaction, as opposed to any affirmative acts, the Court is compelled by controlling law to dismiss Plaintiffs' claim. In that regard, like the courts in *DeWitt*, *Naparsteck*, and *Goss ex rel. Goss*, Plaintiffs' "state-created danger" claim will be dismissed because Plaintiffs are attempting to recast the Transit Authority's clear omissions in failing to educate and supervise its employees as affirmative action. *See, e.g., Kaucher*, 455 F.3d at 435. And, as Plaintiffs have not pled the final element of the claim, Plaintiffs' substantive due process claim based on a "state-created danger" will be dismissed.

---

[1] In dismissing Plaintiffs' original complaint, the Court noted that Plaintiffs failed to allege that the Transit Authority "received complaints from patrons and did not reprimand or fire [Mr. Jordan]." (Doc. 11.) The Revised Amended Complaint now asserts that the Transit Authority received multiple complaints about Mr. Jordan and his hostile conduct towards passengers, but, nevertheless, failed to reprimand or fire him. (RAC, ¶¶ 17-21.) Yet, this allegation alone is insufficient to establish the "affirmative act" requirement of a "state-created danger" claim because, in reviewing the allegations in the Revised Amended Complaint as set forth above, Plaintiffs' factual averments are predicated on the Transit Authority's inaction- failing to train, educate, supervise, or discipline its employees- and not on the Transit Authority's affirmative actions in retaining Mr. Jordan as an employee.

**II.     State Law Claims**

Plaintiffs' state law claims will also be dismissed. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim or claims if the district court has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Since the Court will dismiss the "state-created danger" claim – the sole basis of the Court's jurisdiction under 28 U.S.C. § 1331 –  it will also decline supplemental jurisdiction over the state law battery and vicarious liability claims.

**III.    Leave to Amend**

The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 237 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000)). In this case, Plaintiffs will be denied leave to amend for two reasons. First, Plaintiffs have already been granted the opportunity to amend their complaint and were unable to sufficiently allege a "state-created danger" claim. On a more fundamental level, leave to amend will be denied because, even accepting all of Plaintiffs' allegations as true, the Transit Authority's inaction in failing to train, discipline or fire Mr. Jordan, or in failing to protect Mr. Andrews, is insufficient to establish a substantive due process claim. *See, e.g., Thornton v. City of Pittsburgh*, 777 F. Supp. 2d 946, 954 (W.D. Pa. 2011). Thus, further amendment will not cure the defects in Plaintiffs' Revised Amended Complaint. As such, the "state-created danger" claim will be dismissed with prejudice.

**CONCLUSION**

The Court will grant the motion to dismiss. Plaintiffs have not sufficiently pled the

"affirmative act" element of a "state-created danger" claim and the Court declines to exercise jurisdiction over the state law claims.  Moreover, because on this set of facts Plaintiffs cannot establish a "state-created danger" claim, Plaintiffs' claim will be dismissed with prejudice.

An appropriate order follows.

| | |
|---|---|
| May 25, 2012 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |